JS 44 (Rev. 06/17) **CIVIL COVER SHEET** 17-R-3639

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Michael Carter

**(b)** County of Residence of First Listed Plaintiff   Cecil County, MD
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Scott M. Pollins, Pollins Law, 800 Westdale Ave., Swarthmore, PA 19081, 610-896-9909; Joseph E. Spicer, The Law Offices of Peter T. Nicholl, 36 S. Charles St., Ste.1700, Baltimore, MD 21201, 410-244-7005

## DEFENDANTS
Sungard Availability Services LP      17    3639

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Peggy M. Campbell

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff
☒ 3  Federal Question *(U.S. Government Not a Party)*
☐ 2  U.S. Government Defendant
☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|                                          | PTF | DEF |                                                           | PTF | DEF |
|------------------------------------------|-----|-----|-----------------------------------------------------------|-----|-----|
| Citizen of This State                    | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State                 | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country  | ☐ 3 | ☐ 3 | Foreign Nation                                            | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☒ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | ☐ 751 Family and Medical Leave Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | | | | | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
FLSA, Title VII, 42 U.S.C. Section 1981
Brief description of cause:
Putative collective/class action for unpaid overtime, retaliatory discharge, race discrimination

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ Unliquidated
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE _____    DOCKET NUMBER _____

DATE 8/14/17
SIGNATURE OF ATTORNEY OF RECORD   /s/

AUG 14 2017

**FOR OFFICE USE ONLY**
RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 1700 West Creek Village Drive, Apt. H4, Elkton, MD 21921

Address of Defendant: 680 E. Swedesford Rd., Wayne, PA 19087

Place of Accident, Incident or Transaction: 401 N. Broad St., Philadelphia, PA
(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes☐  No☐

Does this case involve multidistrict litigation possibilities?   Yes☐  No☒

RELATED CASE, IF ANY:
Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐  No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. Federal Question Cases:
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☒ All other Federal Question Cases
    (Please specify) __FLSA collective action__

B. Diversity Jurisdiction Cases:
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify) _____

ARBITRATION CERTIFICATION
(Check Appropriate Category)

I, __Scott M. Pollins__, counsel of record do hereby certify:
☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☒ Relief other than monetary damages is sought.

DATE: 8/14/17    Attorney-at-Law    PA76334   Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 8/14/17    Attorney-at-Law    PA76334   Attorney I.D.#

AUG 14 2017

CIV. 609 (5/2012)



# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

Michael Carter                                                                  :                    CIVIL ACTION

Sungard Availability Services, LP                                  :                    NO. **17    3639**

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                                              ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                                                                ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                                                                                     ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                                                                                       (X)

(f) Standard Management – Cases that do not fall into any one of the other tracks.                             ( )

8/14/17           Scott M. Pollins              Plaintiff, Michael Carter
**Date**          **Attorney-at-law**            **Attorney for**

610-896-9909      610-896-9910                 scott@pollinslaw.com

**Telephone**     **FAX Number**                **E-Mail Address**

(Civ. 660) 10/02

AUG 14 2017

BMS
BMS IN THE UNITED STATES DISTRICT COURT
BMS FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL CARTER<br>1700 West Creek Village Drive<br>Apartment H4<br>Elkton, Maryland 21921 | * * * * * | Civil Action No.:<br>17  3639<br>Collective Action Claims |
| Plaintiff, | * * | Class Action Claim |
| v. | * * | Jury Trial Requested |
| SUNGARD AVAILABILITY SERVICES, LP<br>680 East Swedesford Road<br>Wayne, Pennsylvania 19087 | * * * * | |
| Defendant. | * * | |

## COMPLAINT

### I. INTRODUCTION

1. Plaintiff, Michael Carter (Carter), on behalf of himself and similarly situated current and former employees of Defendant, SunGard Availability Services, LP (Sungard), is suing SunGard under the Fair Labor Standards Act (FLSA), 29 U.S.C. §201, *et seq.*, the Pennsylvania Minimum Wage Act (PaMWA), 43 P.S. §333.101, *et seq.*, the Pennsylvania Wage Payment and Collection Law (PaWPCL), 43 P.S. § 260.1, *et seq.* and for unjust enrichment. Carter is also suing SunGard for retaliatory discharge under the FLSA, 29 U.S.C. § 215(a)(3) and for racially discriminatory and retaliatory discharge under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.*, as amended by the Civil Rights Act of 1991 (Title VII), 42 U.S.C. §1981, and the Pennsylvania Human Relations Act, 43 Pa.C.S.A. § 951 *et seq.* (PHRA). Carter seeks all relief against SunGard that he and his similarly situated current and former SunGard employees are entitled to, including an order permitting this case to proceed as a collective action under the FLSA and as a class action under the PaMWA, prompt notice to all potential collective

1

and class action members, unpaid overtime/wages, liquidated damages, interest, attorney's fees and costs, and such other relief as the Court shall deem proper. For his wrongful discharge claim, Carter seeks all relief against SunGard that he is entitled to under the FLSA and Title VII, Section 1981 and PHRA, including compensatory and punitive damages, back and front pay, and attorney's fees and costs.

## II.   JURISDICTION AND VENUE

2. This Court has jurisdiction over Carter's FLSA claims pursuant to 28 U.S.C. §1331 and 29 U.S.C. §216(b) and his Title VII and Section 1981 claims pursuant to 28 U.S.C. §1331. This Court has jurisdiction over Carter's state law claims pursuant to 28 U.S.C. § 1367(a).

3. This lawsuit properly lies in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1391(b) because the claims arose in this judicial district.

## III.   PARTIES

4. Carter is an adult resident of Cecil County, Maryland.

5. SunGard is a company that provides IT services to businesses, including cloud based storage, application management, consulting, and disaster recovery services. SunGard has its principal business office at 680 E. Swedesford Road, Wayne, Pennsylvania 19087.

## IV.   BACKGROUND ABOUT CARTER'S UNPAID OVERTIME CLAIMS

6. Carter's unpaid overtime claims stems from a common scheme devised by SunGard to avoid paying Carter and others similarly situated their wages owed. SunGard classified Carter and others similarly situated as salaried employees in an attempt to avoid paying these employees overtime pay (time-and-a-half) for all hours worked over forty (40) in a workweek. SunGard hired Carter and other similarly situated employees to work as network security

2

analysts at its Philadelphia location. SunGard failed to compensate Carter and others similarly situated properly for all hours worked.

7. SunGard was able to complete these illegal acts by paying Carter under the guise of a salary. However, Carter's duties did not exempt him from the overtime requirements of the FLSA, PaMWA and PaWPCL. SunGard willfully and intentionally misclassified Carter as a salaried employee for the purpose of not paying overtime compensation for all hours worked. Through this unlawful scheme, SunGard willfully and intentionally evaded the payment of wages owed to Carter and others similarly situated.

## V.    FACTUAL BACKGROUND

### A.    FLSA, PaMWA and PaWPCL group claims for unpaid overtime

8. Due to the nature of its business, SunGard is subject to the FLSA, PaMWA and PaWPCL.

9. Due to the amount in revenues it generated, SunGard is subject to the FLSA, PaMWA and PaWPCL; SunGard's annual dollar volume of business exceeds five hundred thousand dollars ($500,000.00).

10. At all times relevant to this Complaint, Carter engaged in interstate commerce by the nature of his duties performed as part of his employment with SunGard.

11. At all times throughout Carter's employment, SunGard fell within the purview of the term "employer" under the FLSA, PaMWA and PaWPCL.

12. At all times relevant, SunGard classified Carter and other workers similarly situated as exempt employees.

13. From approximately October 2013 to approximately January 27, 2016, Carter worked for Sungard as a network security analyst.

3

14. At all times relevant to this Complaint, SunGard controlled the administration of its business and set employee schedules, including that of Carter and other similarly situated employees.

15. SunGard was actively engaged in the management and direction of Carter and others similarly situated.

16. SunGard possessed and exercised authority to determine the hours worked by Carter and others similarly situated.

17. SunGard had the authority to control Carter's tasks and the tasks of others similarly situated.

18. SunGard had the power and authority to change the nature of the duties of Carter and others similarly situated.

19. Carter and other members of the putative class recognized SunGard's authority and obeyed SunGard's instructions.

20. SunGard made all decisions relating to the rates and methods of pay of Carter and others similarly situated.

21. Carter and others similarly situated were employed by SunGard to work as network security analysts (hereinafter "analysts") at SunGard in Philadelphia. During the course of his employment as an analyst, Carter and others similarly situated performed duties relating to monitoring network traffic, investigating intrusions, responding to threats and support tasks related to the operation of SunGard's information security program.

22. As part of Carter's daily duties, he would receive an email from his supervisor or from an automated program that would indicate that a threat from an outside source such as malicious traffic was interrupting the functionality of a customer's website or internal system.

4

Carter would then either reroute the traffic, or use some other predetermined safeguard in order to protect the customer's data or website. All the solutions to any issue that arose were spelled out for Carter, by SunGard. Carter had no discretion as to what solution to apply to a given situation.

23. Carter's duties also included assisting in the set-up of user access, in order for users of the systems to be able to log in to certain websites and databases, both on SunGard's local network, as well as the customer's environments. This was accomplished using SunGard's prescribed methods for setting up users with login information.

24. Carter's schedule was 7 p.m. until 7 a.m., Thursday, Friday, Saturday each week, and alternating Wednesdays.

25. During Carter's time of employment, this schedule resulted in thirty-six (36) hours being worked for the first and third weeks in a month, and forty-eight (48) hours being worked in the second and fourth weeks in a month.

26. Due to this schedule, Carter would work an additional (8) eight hours per week beyond forty (40), twice per month.

27. During the entire period of time relevant to this lawsuit, Carter was a salaried employee and was paid on a bi-monthly basis.

28. From approximately October 2013 to approximately January 27, 2016, Carter received bi-monthly payments reflecting a salary of two thousand, three hundred and thirty-two dollars and ninety-two cents ($2,332.92) per pay period.

29. Carter did not have the authority to produce schedules for other employees.

30. Carter did not take part in the process of interviewing prospective employees.

31. Carter had no discretion in the performance of his duties.

5

32. Carter exercised no control, nor did he have the authority to do so, over SunGard's management policies.

33. Carter exercised no independent judgment over matters of significance.

34. For the duration of his employment, Carter performed no analysis.

35. Carter and others similarly situated did not supervise other employees.

36. Carter and others similarly situated did not have the authority to hire or fire other employees.

37. Carter and others similarly situated did not interpret any information.

38. Carter and others similarly situated did not write any reports.

39. Carter and others similarly situated made no recommendations.

40. Carter and others similarly situated had no discretion in performing any of their assigned tasks.

41. Carter did not participate in the design, development, analysis, creation, testing or modification of any computer systems or programs.

42. Carter satisfied the requirements of his job and adequately performed his duties to benefit SunGard, as well as SunGard's customers.

43. For the duration of his employment, Carter performed his duties at SunGard located in Philadelphia.

44. SunGard enacted the practices discussed above in order to evade both Federal and Pennsylvania wage laws. These practices directly resulted in Carter and others similarly situated not being paid overtime wages.

45. There is no bona fide dispute that Carter and others similarly situated are owed overtime wages for hours worked over forty (40) in a workweek. SunGard, acting without good

6

faith, withheld these overtime wages. At no time did Carter's duties include work that would make him exempt from the FLSA, PaMWA and PaWPCL provisions requiring that he be paid overtime wages. There is no justifiable basis for Carter being identified as a salaried employee.

46. The nature of Carter's duties did not excuse SunGard from paying him overtime pay ("time-and-a-half") for hours worked in excess of forty (40) in a workweek.

47. Carter's responsibilities as a network security analyst did not require an advanced degree or specialized intellectual instruction or study.

48. Carter and others similarly situated retained no discretion in performing any of their assigned duties.

49. SunGard knew that Carter and others similarly situated customarily worked over forty (40) hours per week and suffered and/or permitted Carter and others similarly situated to work these overtime hours.

50. Due to the nature of Carter's duties, SunGard required Carter to work more than forty (40) hours per workweek.

51. SunGard knew that Carter was not compensated for overtime. Carter did not receive overtime pay ("time-and-a-half") for hours worked over forty (40) in a week. SunGard improperly categorized Carter as a salaried employee to avoid the requirement of paying him overtime.

52. Carter's duties did not justify him being paid on a salary basis to begin with.

53. Carter has not received any premium pay (time-and-a-half) for any of the hours he worked over forty (40) in a workweek during his tenure with SunGard.

54. Consequently, Carter seeks the wages he is entitled to and other available relief through this Complaint.

55. Pursuant to the FLSA, Carter commences this collective action against SunGard on behalf of himself and those similarly situated for the payment of wages owed for all hours worked and an overtime rate of not less than one and a half (1.5) times their regular rates of pay.

56. Carter consents to be party plaintiff in this matter. It is anticipated that other individuals will join Carter during the litigation of this matter and file written consents to "opt in" to this collective action.

57. Upon information and belief, there are numerous similarly situated current and former employees of SunGard that have been harmed by SunGard's common scheme to underpay its employees and violate the FLSA.

58. These similarly situated persons are known to SunGard and are readily identifiable through SunGard's records.

59. Many of these similarly situated employees would benefit from the issuance of court-supervised notice, granting them the opportunity to join this lawsuit.

60. Upon information and belief, others will choose to join Carter in this action and opt in to this lawsuit to recover unpaid wages and other available relief.

61. Carter also brings this action pursuant to Rule 23 of the F.R.Civ.P. on behalf of himself and other current and former employees that served as network security analysts for SunGard and were subject to the following practices and policies: denial of overtime wages under PaMWA for hours worked over forty (40) in a single workweek.

62. Carter is a member of the proposed class he seeks to represent.

63. The claims alleged by Carter are typical of the claims of the proposed class members.

64. Upon information and belief, the potential members of the class are sufficiently numerous that joinder of all class members is impractical.

65. There are questions of law and fact common to the class that predominates over any questions exclusive to the individual class members.

66. Counsel for the proposed class is qualified in litigating wage and hour class actions and other complex litigation matters; furthermore, counsel is capable of providing adequate representation for all members of the proposed class.

67. A class action is superior to other available methods for the fair and efficient adjudication of this case and will serve to promote judicial economy to the benefit of this Court, as well as the involved parties.

### B.  Carter's retaliatory and racially discriminatory discharge claim

68. On approximately November 2, 2015, Carter made a race discrimination complaint to Chip Giacchetto in SunGard's human resources and/or Employee Relations department.

69. Carter again complained about race discrimination and he also complained about not being paid overtime to Mr. Giacchetto on January 8, 2016.

70. On approximately January 22, 2016, SunGard issued Carter a written warning for not enabling a port on a customer's device.

71. On approximately January 27, 2016, SunGard terminated Carter for alleged attendance and attitude issues.

72. Upon information and belief, Christopher Schwick (white male, believed to have made significantly costly mistake, SunGard did not terminate him) and Tin (last name unknown, Asian male, believed to have left work early 1-2x/week, SunGard did not terminate him) are similarly situated co-workers who are not black who SunGard treated more favorably than Carter.

## VI. CLAIMS

### COUNT I – FLSA

73. Paragraphs 1-72 are incorporated by reference as if fully set forth herein.

74. The FLSA requires employers such as SunGard to pay employees overtime compensation of 'not less than one and one-half times' their regular rate of pay for all hours worked over 40 in a work week. 29 U.S.C. §207(a)(1).

75. SunGard violated the FLSA by failing to pay SunGard network security analysts (including Carter) any compensation, including time and a half overtime compensation, for all hours worked in excess of 40 hours/week.

WHEREFORE, Carter seeks the following relief: 1) an order permitting this lawsuit to proceed as a collective action; 2) prompt notice of this lawsuit be given to all potential collective members; 3) unpaid compensation damages; 4) liquidated damages; 5) interest; 6) litigation costs including attorney's fees and expenses; and 7) such other relief as the Court shall deem proper.

### COUNT II – PaMWA

76. Paragraphs 1-72 are incorporated by reference as if fully set forth herein.

77. The PaMWA requires employers such as SunGard to pay employees overtime compensation of 'not less than one and one-half times' their regular rate of pay for all hours worked over 40 in a work week. 43 P.S. §333.104(c).

78. SunGard violated the PaMWA by failing to pay SunGard network security analysts (including Carter) any compensation, including time and a half overtime compensation, for all hours worked in excess of 40 hours/week.

WHEREFORE, Carter seeks the following relief: 1) an order permitting this lawsuit to proceed as a class action; 2) prompt notice of this lawsuit be given to all potential class members; 3) unpaid compensation damages; 4) interest; 5) litigation costs including attorney's fees and expenses; and 6) such other relief as the Court shall deem proper.

## COUNT III – PaWPCL

79. Paragraphs 1-72 are incorporated by reference as if fully set forth herein.

80. The unpaid compensation Carter failed to pay Carter and other SunGard network security analysts is considered wages under the PaWPCL.

81. SunGard violated the PaWPCL by failing to pay SunGard network security analysts (including Carter) any compensation, including time and a half overtime compensation, for all hours worked in excess of 40 hours/week.

WHEREFORE, Carter seeks the following relief: 1) an order permitting this lawsuit to proceed as a class action; 2) prompt notice of this lawsuit be given to all potential class members; 3) unpaid compensation damages; 4) liquidated damages; 5) interest; 6) litigation costs including attorney's fees and expenses; and 7) such other relief as the Court shall deem proper.

## COUNT IV – UNJUST ENRICHMENT

82. Paragraphs 1-72 are incorporated by reference as if fully set forth herein.

83. At all times relevant to this Complaint, SunGard by its policies and practices, benefited from, and increased its profits by failing to pay wages earned and due to Carter and his similarly situated network security analysts at a rate not less than 1 ½ times the regular rate of pay for all work performed in excess of 40 hours in a work week.

84. SunGard accepted and received the benefits of the work performed by Carter and his similarly situated network security analysts without compensating them for said work. The

profits of SunGard were unjustly enriched at the expense of Carter and his similarly situated network security analysts.

WHEREFORE, Carter seeks judgment for SunGard's unjust enrichment in an amount equal to the benefits unjustly retained by SunGard, plus interest on these amounts.

### COUNT V – FLSA RETALIATORY DISCHARGE

85. Paragraphs 1-72 are incorporated by reference as if fully set forth herein.

86. Carter engaged in the protected activity of complaining about payment of overtime, he was terminated following his protected activity and SunGard terminated him because of his protected activity.

87. The alleged legitimate non-retaliatory reasons SunGard gave to Carter for his termination are pretextual. SunGard's retaliatory discharge of Carter violates 29 U.S.C. §215(a)(3) and the public policy embodied in the FLSA.

WHEREFORE, Carter seeks the following relief: 1) back pay and back benefits; 2) front pay and front benefits; 3) compensatory damages; 4) liquidated/punitive damages; 5) interest; 6) litigation costs including attorney's fees and expenses; and 7) such other relief as the Court shall deem proper.

### COUNT VII – RACE DISCRIMINATION – TITLE VII, SECTION 1981 AND PHRA

88. Paragraphs 1 through 72 are incorporated by reference as if fully set forth herein.

89. The acts, failures to act, practices and policies of SunGard set forth above constitute race discrimination in violation of Title, VII, Section 1981, and the PHRA.

90. As a direct and proximate result of SunGard's illegal discriminatory conduct, Carter has suffered damages in the form of back pay and benefits, front pay and benefits and emotional distress including, but not limited to, anxiety, stress, humiliation and embarrassment.

WHEREFORE, Carter respectfully demands judgment in his favor and against SunGard for compensatory damages for emotional distress, mental anguish, humiliation and embarrassment, back pay, reinstatement or front pay, lost benefits, negative tax consequence damages, punitive damages, attorney's fees plus costs, declaratory relief that the conduct engaged in by SunGard violated Carter's civil rights, equitable/injunctive relief directing SunGard to cease any and all unlawful race discrimination against black employees and retaliation against employees who complain about discrimination and such other relief as the Court shall deem proper.

## COUNT VIII – RETALIATION – TITLE VII, SECTION 1981 AND PHRA

91. Paragraphs 1 through 72 are incorporated by reference as if fully set forth herein.

92. The acts, failures to act, practices and policies of SunGard set forth above constitute retaliation in violation of Title, VII, Section 1981, and the PHRA.

93. As a direct and proximate result of SunGard's illegal retaliatory conduct, Carter has suffered damages in the form of back pay and benefits, front pay and benefits and emotional distress including, but not limited to, anxiety, stress, humiliation and embarrassment.

WHEREFORE, Carter respectfully demands judgment in his favor and against SunGard for compensatory damages for emotional distress, mental anguish, humiliation and embarrassment, back pay, reinstatement or front pay, lost benefits, negative tax consequence damages, punitive damages, attorney's fees plus costs, declaratory relief that the conduct engaged in by SunGard violated Carter's civil rights, equitable/injunctive relief directing SunGard to cease any and all unlawful race discrimination against black employees and retaliation against employees who complain about discrimination and such other relief as the Court shall deem proper.

Respectfully submitted,

By:   SMP2861
      Scott M. Pollins - Pa. Atty. Id. No. 76334
      **Pollins Law**
      800 Westdale Avenue
      Swarthmore, PA 19081-2311
      (610) 896-9909 (phone)
      (610) 896-9910 (fax)
      scott@pollinslaw.com (email)


      /s/ Joseph Spicer
      Joseph Spicer
      **The Law Offices of Peter T. Nicholl**
      36 South Charles Street, Suite 1700
      Baltimore, Maryland 21201
      Telephone No.: (410) 244-7005
      Fax No.: (410) 244-8454
      E-mail: jspicer@nicholllaw.com
      (Pending pro hac vice admission)


      Attorneys for Plaintiff, Michael Carter

Date:   8/14/17