# SCOTT M. POLLINS
Attorney at Law
Member PA, NJ and MD Bar

800 Westdale Avenue                        Phone: (610) 896-9909
Swarthmore, PA 19081                     Fax:    (610) 896-9910
Email: scott@pollinslaw.com              www.pollinslaw.com

## **FAX COVER SHEET**

**TO:**        The Honorable Berle M. Schiller
                Michael J. Puma, Esquire (via email)
**FAX NO.** (267) 299-5073
**FROM:** Scott M. Pollins, Esquire
**DATE:** 4/8/19
**RE:**       <u>Michael Carter v. Sungard Availability Services, LP</u>
**PAGES:** 11, including cover sheet

Please call (610) 896-9909 if any problems or questions. Thank you.

    ___X___     Original Will Not Follow
    _____     Original Will Follow By:
                     _____ U.S. Mail
                     _____ Overnight Express Mail
                     _____ Hand Delivery
                     _____ Email

**CONFIDENTIALITY NOTICE**

THIS FACSIMILE MESSAGE MAY CONTAIN PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT THE REVIEW, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA U.S. POSTAL SERVICE. THANK YOU.

## SCOTT M. POLLINS
Attorney at Law
Member PA, NJ and MD Bar

800 Westdale Avenue  
Swarthmore, PA 19081  
Email: scott@pollinslaw.com

Phone: (610) 896-9909  
Fax: (610) 896-9910  
www.pollinslaw.com

April 8, 2019

**Via Facsimile (267) 299-5073**

The Honorable Berle M. Schiller  
U.S. District Court for the E.D. of Pa.  
601 Market Street  
13613 U.S. Courthouse  
Philadelphia, PA 19106-1797

    RE: **Michael Carter v. Sungard Availability Services, LP**  
       **U.S. District Court for the E.D. of Pa. Civil Action No. 17-3639**

Dear Judge Schiller:

  Plaintiff, Michael Carter (Carter), and Defendant, Sungard Availability Services, LP (AS), by and through their attorneys, jointly move this Honorable Court to grant the parties' joint letter motion to approve settlement. In support thereof, the parties state as follows.

  Carter filed a Complaint against AS in August 2017 (ecf no. 1). He subsequently filed an Amended Complaint against AS in June 2018 (ecf no. 22). In his amended complaint, he asserted claims for unpaid overtime under the FLSA and Pa. Minimum Wage Act (PaMWA) and he also asserted a putative FLSA collective action complaint on behalf of himself and other similarly situated network security analysts. Carter asserted other claims in his June 2018 amended complaint that he later agreed to dismiss from this case. One person consented to join this case as an opt-in for the FLSA unpaid overtime claim and that person subsequently withdrew his opt-in and his claim was dismissed.

  In his June 2018 Amended Complaint, Carter claimed that AS did not pay him overtime compensation for weeks in which he worked more than 40 hours. Throughout the course of discovery, AS defended Carter's unpaid overtime claim by asserting that his job position of network security analyst was exempt due to the administrative ,computer, or combination exemptions and, alternatively, that Carter did not actually work all of the overtime hours he claimed to have worked.

The Honorable Berle M. Schiller
April 8, 2019
Page 2

      The parties exchanged and responded to interrogatories and requests for documents. AS's counsel deposed Carter on August 23, 2018. In response to Carter's request for 30(b)(6) testimony on Carter's job duties and AS's basis for classifying his network security analyst job as overtime exempt, AS produced Carter's former supervisor Daniel Watson. AS presented Mr. Watson as a 30(b)(6) witness authorized to testify on AS's behalf about Carter's salary, job duties, work hours, and time records. Carter's counsel deposed Mr. Watson on December 4, 2018.

      On January 25, 2019, Carter and AS filed motions for summary judgment (ecf nos. 34 and 35). On March 11, 2019, Your Honor denied Carter's motion for summary judgment and denied in part and granted in part AS's motion for summary judgment (ecf no. 44). The remaining claims set for trial were Carter's claim for unpaid overtime under the FLSA and Pa. Minimum Wage Act.

      Carter's counsel calculated the unpaid overtime AS allegedly owed him as follows. Carter asserts that he worked 48 hours/week and 36 hours/week on alternating weeks throughout his employment at AS. For the period of 8/14/14 (three years before Carter filed his EDPa Complaint) through 1/27/16 (the date AS fired Carter) as the unpaid overtime period. This is a period of 76 weeks, of which half of that time, 38 weeks, Carter allegedly would have worked 8 hours/week of overtime. Carter's counsel calculated his hourly rate by using his 2015 W-2 yearly compensation of $55,742.58 and dividing that by 2080 hours which equals $26.80/hour. Carter's counsel calculated his unpaid overtime as 38 weeks x 8 hours/week x $13.40/hour (half time rate) = $4,073.60. His claimed liquidated damages are the same amount.

      In the days after Your Honor's March 11 summary judgment opinion, counsel engaged in settlement discussions that resulted in an agreement to settle this case for $19,500. As of then, Carter's counsel's attorney's fees and expenses related to the unpaid overtime portion of this case were about $27,000. To facilitate settlement, Carter's counsel agreed to discount their attorney's fees. The parties' counsel agreed that the $19,500 settlement will be paid as follows: $3,750.00 to Carter as his alleged unpaid overtime (to be paid via a Form W-2), $3,750.00 to Carter as his alleged interest, liquidated damages, and penalties (to be paid via a Form 1099, Box 3) and $12,000 paid to Carter's counsel as their alleged attorney's fees and expenses.

      Through this proposed settlement, Carter will be paid about 92% of his total best case recovery and Carter's counsel will be paid about 44% of their attorney's fees and expenses. As part of the settlement, Carter will individually release and discharge AS from federal and state wage and hour and other claims arising from his employment with AS, as described in more detail in the settlement agreement attached hereto as ***Exhibit 1***. Among other terms and conditions, Carter also has agreed that he will not apply for or accept further employment with or other work for AS, and the parties have agreed to a mutual non-disparagement clause under the terms provided in the settlement agreement attached hereto as ***Exhibit 1***.

The Honorable Berle M. Schiller
April 8, 2019
Page 3

    Based on Carter's counsel's investigation of the facts of this case and in discussion with Carter, Carter's counsel believed that they had a relatively strong argument that AS owed unpaid overtime to Carter. AS disputed Carter's entitlement to overtime wages for the reasons set forth above. As a compromise, the parties agreed to the settlement as described in this Letter Motion and as set forth in the settlement agreement attached hereto as ***Exhibit 1***. AS continues to deny all liability and is confident it would prevail at trial, but the cost of trial would far exceed this settlement, not to mention any appeals.

    Counsel disputed whether Carter's counsel would be able to prove that the look-back period for FLSA unpaid overtime was two or three years. Counsel agreed to settle for the numbers stated above and forgo the expense and risk of preparing for and trying this case. The parties and their counsel recognize that any outcome in the lawsuit would be uncertain and achieving a final result through litigation would require additional risk, time and expense.

    The parties and their respective attorneys have balanced the benefits of settlement with the costs, risks, delay and uncertainty of litigation and the parties and their respective attorneys believe that the settlement reached is in the best interest of all parties and represents a fair, reasonable and adequate resolution of the claims asserted.

    WHEREFORE, all parties respectfully request that this Honorable Court grant this Joint Letter Motion to Approve Settlement and enter the attached proposed Order approving the Settlement.

Respectfully,

By: *[signature]*
Scott M. Pollins

SMP/wwt
Encl.
c: Michael J. Puma, Esquire (w/encl. via email – michael.puma@morganlewis.com)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL CARTER** <br> Plaintiff <br><br> v. <br><br> **SUNGARD AVAILABILITY SERVICES, LP**: <br> Defendant | : <br> : <br> : **CIVIL ACTION NO. 17-3639** <br> : <br> : <br> : |

## ORDER

AND NOW, this _____ day of _____, 2019, upon consideration of Plaintiff's and Defendant's Joint Letter Motion to Approve Settlement and consideration of the material terms of the agreed-upon settlement of this action, and having concluded, pursuant to 29 U.S.C. § 216(b), that the agreed-upon settlement of this action represents a fair and reasonable resolution of a bona fide dispute under the Fair Labor Standards Act, it is hereby **ORDERED** and **DECREED** that the Joint Motion is **GRANTED** and the settlement of this action is hereby **APPROVED** and the matter is **DISMISSED WITH PREJUDICE**.

**BY THE COURT:**

_____
Berle M. Schiller, J.

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release ("Agreement") is entered into between Plaintiff Michael Carter ("Carter") and Defendant Sungard Availability Services, LP ("SAS") (collectively, the "Parties") in order to settle Carter's claims arising under the Fair Labor Standards Act ("FLSA") and the Pennsylvania Minimum Wage Act ("PMWA"), as well as all other wage and hour (including retaliation) or discrimination or other claims that were or could have been brought in the action pending in the United States District Court for the Eastern District of Pennsylvania ("the Court") and captioned Michael Carter v. Sungard Availability Services, LP, 2:17-cv-03639-BMS ("the Action").

WHEREAS, on August 14, 2017, Carter initiated the Action by filing a Complaint in which he (1) asserted claims for overtime compensation on behalf of a purported collective action under the FLSA and on behalf of a purported class action under the PMWA, the Pennsylvania Wage Payment and Collection Law ("WPCL"), and for unjust enrichment, (2) alleged that he was retaliated against for allegedly raising complaints of race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Rights Act ("PHRA") and for allegedly complaining that his position was misclassified under the FLSA, and (3) brought claims for discrimination based on his race pursuant to Title VII and the PHRA.

WHEREAS, as of March 11, 2019, the only remaining claims in the Action are Carter's purported individual claims for overtime compensation under the FLSA and PMWA; and

WHEREAS, the Parties desire to avoid the expense and inconvenience of continued litigation, and in order to achieve a full and complete release, Carter acknowledges that this Agreement is intended to include and resolve all the claims that were at any time asserted in the Action or could have been as more fully set forth below.

NOW, THEREFORE, in consideration of the mutual covenants set forth in this Agreement, the receipt and sufficiency of which are hereby acknowledged, the Parties stipulate and agree as follows:

1. **Settlement Contingent on Court Approval and Carter's Acceptance.**

    a. This settlement is contingent on the entry of an order by the Court approving this settlement ("Approval Order") and the terms set forth herein without modification and dismissing the entire Action (including all claims asserted in the Action) with prejudice (the date of the Approval Order defined as "the Approval Date"). If the Court does not enter such an order, this Agreement will be null and void, the Action will continue to go forward in the Court, the Parties will return to the *status quo ante*, and the Parties will jointly propose a new schedule to the Court for trial and related pre-trial deadlines.

    b. Carter's counsel will move the Court for entry of the Approval Order and will be responsible for preparing the motion for Court approval and any accompanying legal

papers ("the Approval Motion"), which will be provided to SAS's counsel at least three (3) days before filing, will incorporate reasonable revisions by SAS's counsel, will attach this Agreement as an exhibit, will attach a proposed order dismissing the Action with prejudice (to be approved by SAS's counsel), and will be publicly filed through the Court's ECF system.

    c.    Carter waives any perceived right to appeal the Approval Order and will not attempt to do so, in which case he would be required to immediately repay to SAS all consideration under this Agreement and would be liable for SAS's fees in defending the appeal.

2.    **No Admission of Liability.**  Any actions or payments made hereunder are made solely for purposes of settlement and compromise and are not to be construed as (and are not) any admission of liability or unlawful conduct on the part of SAS or any of the Released Parties (defined below), and SAS and the Released Parties expressly deny any such liability or unlawful conduct. SAS continues to maintain that Carter and other employees working in his former position are correctly classified and paid, consistent with the Court's ruling denying Carter's motion for summary judgment on his claim for overtime. SAS nevertheless has resolved this matter given that the cost of defending Carter's claims through trial would far exceed his maximum claimed damages.

3.    **SAS's Total Payment under This Agreement.**  Contingent on Court approval of this Agreement and all other requirements under this Agreement, SAS agrees to pay the total amount of Nineteen Thousand Five Hundred Dollars and No Cents ($19,500.00) (the "Settlement Payment") in exchange for the release of legal claims described in Paragraph 6 below and otherwise in connection with Carter's commitments in this Agreement, including his release of claims beyond his FLSA/PMWA claims, his no-rehire commitment, and his non-disparagement commitment. All payments in the amounts set forth in Paragraphs 4 and 5 will be made by SAS (provided Carter and Carter's counsel already provided SAS with its or their IRS Form W-9 and/or any other tax documents reasonably requested by SAS) within 20 calendar days after the Approval Date ("the Payment Date").

4.    **Payment to Carter.**  The Approval Motion will request that Carter will receive a payment of $7,500.00 payable from the Settlement Payment. If the Court enters the Approval Order, then on the Payment Date, SAS will distribute a check to Carter through his counsel for the Court-approved amount not to exceed $7,500. The payment shall be allocated 50% as claimed wages for which a W-2 will be issued and 50% as claimed interest, liquidated damages, and penalties for which an IRS 1099 will be issued. SAS will report all payments to government authorities including the IRS as required by law, and shall make all legally required deductions, withholdings and/or employment tax payments with regard to the payment described in this Paragraph 4.

5.    **Payment to Carter's Counsel.**  In addition to the payment described in Paragraph 4 above, if the Court enters the Approval Order, Carter's counsel will receive a payment of $12,000.00 from the Settlement Payment to compensate them for Carter's claimed legal fees and expenses. In that event, SAS will issue on the Payment Date to "Pollins Law" a check in the amount of any Court-approved fees and expenses up to a maximum of $12,000.00. Pollins Law shall then distribute the appropriate attorneys' fees and costs to co-counsel. The Law

2

Offices of Peter T. Nicholl. Carter's counsel affirm that no other lawyers or law firms have any right to or interest in the fees and costs at issue in this case. By signing this Agreement, Carter and Carter's counsel acknowledge that they are solely responsible for the payment of taxes relating to the fees/expenses payment, which will be reported on required Form 1099s.

6. **General Release of Claims.** Carter, on behalf of himself and his heirs, executors, and assigns and representatives such as his wife, hereby agrees to waive, release, and forever discharge SAS and all of its past, present and future parents, subsidiaries, affiliates, successors and predecessors, including each of their directors, officers, employees, insurers, benefit plans, benefit plan administrators, lawyers, and agents (the "Released Parties"), from any and all legally waivable claims, obligations, causes of action, actions, demands, rights, and liabilities, whether known or unknown, whether anticipated or unanticipated, whether under a federal, Pennsylvania, or any other statute, ordinance, regulation, or common law, including, without limitation, claims arising under the FLSA or PMWA arising on or prior to the date of the Approval Order. This general release includes, but is not limited to, those claims which: (a) were pled in the Action at any time, including Carter's discrimination, retaliation and WPCL claims; and/or (b) could have been pled based on the factual allegations in the Action, including all claims based on any of the following: (i) alleged failure to pay any type of straight time, overtime wages, or any other wages; and (ii) any statutory, constitutional, regulatory, contractual or common law claims for overtime or any other wages, damages, restitution, equitable relief, or litigation costs. This general release also includes all claims for legal costs and expenses, legal fees, liquidated damages, interest, declaratory or injunctive relief, or other relief relating to or stemming from such released claims.

7. **Non-Disparagement.**

    a. In consideration of the promises and considerations contained in this Agreement, and to the extent permitted by applicable law, Carter represents and agrees that he will not directly or indirectly criticize, denigrate or otherwise disparage or cause disparagement to SAS or encourage or assist others in doing so.

    b. In addition, SAS will instruct its managers who supervised Carter and who are still employed to not directly or indirectly criticize, denigrate or otherwise disparage or cause disparagement to Carter. Moreover, if asked in future employment verification inquiries, SAS will verify that Carter was employed as a Network Security Analyst from August 5, 2013 until January 27, 2016, and provide no other information such as statements regarding his performance or separation from employment.

    c. If Carter or SAS initiate legal action for a violation of this Section 7, the prevailing party in any such legal action shall be entitled to recover their reasonable attorney's fees and expenses from the losing party. Prevailing party means that the party obtained a judgment or judicial finding in their favor and does not include a settlement.

8. **Reports to Government Entities.** Carter understands and agrees that nothing in this Agreement, including but not limited to the General Release of Claims in Paragraph 6 and the Non-Disparagement provision in Paragraph 7(a), prevents him from initiating

3

communications directly with, responding to any inquiries from, providing testimony before, providing confidential information to, reporting possible violations of law or regulation to, or from filing a claim or assisting with an investigation directly with a self-regulatory authority or a government agency or entity, including the U.S. Equal Employment Opportunity Commission, the Department of Labor, the National Labor Relations Board, the Department of Justice, the Securities and Exchange Commission, the Congress, and any agency Inspector General (collectively, the "Regulators"), or from making other disclosures that are protected under the whistleblower provisions of state or federal law or regulation. However, to the maximum extent permitted by law, Carter is waiving his right to receive any individual monetary relief from the Released Parties resulting from such claims or conduct or otherwise, regardless of whether Carter or another party has filed them, and in the event he obtains such monetary relief, SAS will be entitled to an offset for the payments made pursuant to this Agreement. The General Release of Claims set forth in Paragraph 6 does not limit Carter's right to receive an award from any Regulator that provides awards for providing information relating to a potential violation of law. Carter does not need the prior authorization of SAS to engage in conduct protected by this Paragraph 8, and Carter does not need to notify SAS that he has engaged in such conduct.

9. **No Further Employment with SAS.** Carter understands and agrees that he has no right to employment (including through a staffing agency or vendor) or independent contractor relationship with SAS or any of its parents, subsidiaries, affiliates, successors or related companies and is not eligible for re-hire by or a contractual or other relationship with SAS or any of its parents, subsidiaries, affiliates, successors or related companies. Carter further agrees that he shall not apply for or accept re-employment directly with SAS or any of its parents, subsidiaries, affiliates, successors or related companies, including as an independent contractor or as a temporary worker through any staffing firms or other temporary services providers.

10. **Consideration.** Carter's release (Paragraph 6), non-disparagement (Paragraph 7(a)), no-rehire commitment (Paragraph 9), and all other obligations and promises by Carter in this Agreement are made in exchange for the settlement payments set forth in Paragraphs 4 and 5 of this Agreement, the sufficiency of which is hereby acknowledged.

11. **Knowing and Voluntary Agreement.** The Parties have read carefully this Agreement, have had an opportunity to consult with their attorneys, and are executing this Agreement voluntarily and with full knowledge and understanding of its significance, meaning, and binding effect. The Parties are competent to understand the content and effect of this Agreement. Their decision to enter into this Agreement has not been influenced by fraud, duress, coercion, mistake, or misleading information.

12. **Governing Law.** This Agreement will be governed and construed according to Pennsylvania law.

13. **Integration, Modification, and Waiver.** This Agreement constitutes the entire agreement of the Parties, and supersedes all prior understandings, whether oral or written, between them, pertaining to the released claims described in Paragraph 6 above. Any modification of this Agreement must be made in writing and signed by all Parties. The failure of

any of the Parties at any time to require the performance of any provision hereof shall in no manner affect the right of the Parties at a later time to enforce the same.

14. **Authority.** The Parties each warrant and represent that they are fully authorized to execute and to enter into this Agreement, and the Parties have not sold, assigned, granted, or transferred to any person any of the released claims described in Paragraph 6 above.

15. **Successors and Assigns.** This Agreement shall inure to the benefit of and be binding upon the Parties and their affiliates, heirs, successors, and assigns, except as otherwise provided herein.

16. **Counterparts.** This Agreement may be executed in one or more counterparts, and if so executed each such counterpart shall have the force and effect of an original. A facsimile or copy of an original signature or an electronic signature transmitted to the other party is effective as an original signature. The Parties agree that for all purposes, a .PDF or facsimile of this Agreement shall have the same legal force and effect as the originals, and no party shall have the duty to furnish an original of this Agreement.

17. **Mutual Drafting.** The Parties agree that each has contributed to the drafting of this Agreement and none of the Parties shall have any part of this Agreement interpreted against their interests on the basis that the Parties drafted the language to be interpreted.

18. **No Other Clients or Prospective Clients.** Carter's counsel confirms that other than Carter, they do not currently have any other clients or prospective clients employed or formerly employed by SAS and are not aware of any other individuals considering claims against SAS or any of the Released Parties.

19. **No Reliance On Agreement.** This Agreement may not be relied upon or referenced in any continued litigation by Carter if the Approval Order is not entered or in any other litigation or proceeding involving any SAS employee related to overtime wages.

**IN WITNESS WHEREOF**, and with the intention of being legally bound hereby, the Parties have executed this Agreement on the dates noted below.

— *Signature Page Follows* —

DATED: 4/3/2019    By: _____
                       Michael Carter

DATED: 4/2/19      By: POLLINS LAW
                       _____
                       Scott M. Pollins
                       Attorney for Plaintiff Michael Carter

DATED: 4/1/19      By: THE LAW OFFICES OF PETER T. NICHOLL
                       _____
                       George E. Swegman
                       Attorney for Plaintiff Michael Carter

DATED: 4/4/2019    By: SUNGARD AVAILABILITY SERVICES, LP
                       _____
                       Maureen McGreevey
                       Assistant General Counsel & Vice President

DATED: 4/4/2019    By: MORGAN, LEWIS & BOCKIUS LLP
                       _____
                       Michael J. Puma, as to form only
                       Attorney for Defendant Sungard Availability Services, LP

6

| HP Officejet Pro X576dw MFP Series | | | | Fax Log for<br>Pollins Law<br>6108969910<br>Apr 08 2019 11:05AM | | |
|---|---|---|---|---|---|---|

**Last Transaction**

| Date | Time | Type | Station ID | Duration | Pages | Result |
|---|---|---|---|---|---|---|
| | | | | Digital Fax | | |
| Apr 8 | 10:58AM | Fax Sent | 2672995073 | 6:52<br>N/A | 11 | OK |